UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
                                           :
UNITED STATES OF AMERICA                   :
                                           :        22 Cr. 122 (VEC)
        -   v.   -                         :
                                           :
STEVEN GALLAGHER,                          :
                                           :
                        Defendant.         :
                                           :
-------------------------------------------------------x


## THE GOVERNMENT'S SENTENCING SUBMISSION


DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007


Richard Cooper
Daniel Tracer
Assistant United States Attorneys
        *- Of Counsel -*

**<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 1

PROCEDURAL HISTORY.................................................................................................... 4

DISCUSSION ....................................................................................................................... 4

    Applicable Law ............................................................................................................... 5

    The Seriousness of the Offense ...................................................................................... 5

    General Deterrence ......................................................................................................... 7

CONCLUSION..................................................................................................................... 8

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in advance of the sentencing of Steven Gallagher ("Gallagher" or the "defendant"), scheduled for June 27, 2022.   Gallagher was a stock trader who used his substantial following on Twitter in order to perpetrate a pump-and-dump scheme in the penny stock securities of SpectraScience, Inc. ("SCIE").   Gallagher lied to his thousands of followers on Twitter about his trading activity in order to artificially increase the SCIE stock price and then profit from that artificially inflated price through his trading activity. In order to reflect the seriousness of the offense and deter others from engaging in deceptive trading activity – particularly in the vulnerable over-the-counter penny stock markets – the Court should impose a term of imprisonment within the applicable United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") range of 8 to 14 months.   Such a sentence would be sufficient but not greater than necessary to serve the legitimate ends of sentencing.

## BACKGROUND

During 2020-21, Gallagher was an active day trader who lived in Ohio.   (*See* Presentence Investigation Report ("PSR"), Dkt. No. 21, ¶ 9).   In particular, Gallagher focused on buying and selling over-the-counter ("OTC") penny stocks, meaning securities that are not traded through a centralized exchange (like the NYSE or NASDAQ), and whose share price is less than one dollar. (*Id.*).   OTC securities are thinly traded and are therefore particularly susceptible to stock manipulation schemes.   (*Id.*).   During that same time period, Gallagher maintained a Twitter account under the alias "Alex DeLarge" (the "DeLarge Twitter Account").   (*Id.*).   As of October 2021, the DeLarge Twitter Account had over 70,000 followers.   (*Id.*).   Gallagher regularly used the DeLarge Twitter Account to disseminate information about certain OTC penny stocks, including, but not limited to, information about specific corporate issuers, information about trends in the penny stock market, and details about Gallagher's own penny stock trading, such as when

he was buying or selling and the amounts of his profits or losses.   In particular, Gallagher would routinely use the DeLarge Twitter Account to "alert" specific penny stocks, meaning that Gallagher would feature, or tout, those stocks as ones worth buying and encourage his followers to purchase them.

In late 2020 through early 2021, Gallagher used the DeLarge Twitter Account to make false and misleading statements about his stock trading activity in the shares of SCIE, a California-based penny stock company that had not been up to date on its SEC filings since approximately 2017.   This false and misleading information was intended to artificially raise the price of SCIE and allow Gallagher to sell his own SCIE holdings at a profit, effectively orchestrating a pump-and-dump scheme.   Starting in December 2020, Gallagher exchanged direct messages over Twitter with others about a plan to "alert" SCIE.   (*Id.* ¶ 13).   In those conversation, Gallagher and others discussed how they would first purchase SCIE stock while it was cheap and then begin to tout the stock on Twitter.   (*Id.* (direct message to Gallagher: "So [an associate] ran by me the SCIE play for monday. I think this should be our only play Monday. Push it right after the team loads up."); (direct message by Gallagher: "if you keep scie quit so i can get in cheap ill try to give it a run starting Tuesday cool?")).   In fact, shortly after these tweets, Gallagher purchased at least approximately 26 million shares of SCIE.   (*Id.* ¶ 14).

While he was building his position in SCIE, Gallagher was actively touting the stock through the DeLarge Twitter Account.   (*Id.* ¶ 15).   In fact, between December 2020 and January 2021, Gallagher posted at least approximately 24 tweets touting SCIE as a valuable and promising penny stock investment.   (*Id.*).   Of note, while he was actively tweeting about SCIE, Gallagher engaged in a number of private direct message conversations that would have led him to know, or at least be aware of the concern, that SCIE was in fact a shell company with no true operations. (*Id.* ¶¶ 13, 15 (direct message to Gallagher: "SCIE is just shell with no guts.."); (direct message to

Gallagher: "what makes you think scie will move i mean the website is dead the companys address is that of neogenesis and the company profile says out of business plus the ceo has left and went to another company.")).   By late January 2021, following many touting tweets by the DeLarge Twitter Account (as well as others), SCIE's share price had risen by approximately 300%.

In late January 2021, Gallagher began to sell off his position in SCIE.   On January 28, Gallagher first sold and re-purchased two million shares, and then sold one million shares.   (*Id.* ¶ 17).   Throughout that day, however, Gallagher issued a series of tweets in which he falsely represented that he had not sold any of his SCIE shares, and encouraged his many followers to buy SCIE.   (*Id.*).   The following day, January 29, Gallagher sold approximately 21.5 million shares of SCIE.   (*Id.* ¶ 18).   Overall, Gallagher earned at least approximately $22,000 in profits from his SCIE trading.   (*Id.* ¶ 21).   Gallagher continued, however, to tweet that he was not selling any of his shares, and continued to tout SCIE.   (*Id.* ¶ 18).   Gallagher's assurances that he was not selling were intended to encourage his followers to continue buying SCIE and thus keep the share price high.

Numerous Twitter users took information from the DeLarge Twitter Account into account in making stock trading decisions inasmuch as Gallagher was an influential penny stock trader who presented himself as knowledge and successful in trading.   At least some of these Twitter users decided to purchase SCIE based, in part, on Gallagher's tweets.   And some of these Twitter users also lost money when they eventually sold the SCIE that they had previously bought during Gallagher's touting.

On February 11, 2021, the SEC suspended trading in SCIE based on the fact that certain social media accounts appeared to have been "engaged in a coordinated attempt to artificially influence the share price of" of SCIE.   (*Id.* ¶ 19).   The next day, Gallagher privately boasted to

another Twitter user that he had been responsible for pushing up SCIE's stock price prior to the suspension.   (*Id.* ¶ 20 ("scie was as good as i made it.")).

## **PROCEDURAL HISTORY**

On October 26, 2021, the defendant was arrested and charged by complaint with securities fraud and wire fraud.   On February 25, 2022, the defendant waived indictment and pled guilty before Your Honor to a one-count Information charging him with securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R. § 240.10b-5; and 18 U.S.C.§ 2.

The Government agrees with the U.S. Probation Office on the United States Sentencing Guidelines (the "Guidelines") calculation in this case, which is also consistent with the stipulated Guidelines range in the plea agreement between the parties.   The applicable Guideline is USSG § 2B1.1, and pursuant to 2B1.1(a)(1), the base offense level is seven.   (PSR ¶ 5).   The loss from the offense cannot be reasonably determined, and therefore four level are added because the gain to the defendant exceeded $15,000 but was less than $40,000.   (*Id.*).   A two-point reduction is warranted for the defendant's acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). (*Id.*).   The defendant has no known criminal history.   Accordingly, the recommended Guidelines range is 8 to 14 months of imprisonment.   (*Id.* ¶ 80).   Through its supplement to the PSR, the Probation Office has recommended a non-custodial sentence.   (PSR at 27).   The PSR's recommendation is based on the "relatively low gain from the offense" and the "defendant's difficult upbringing."   (*Id.* at 28).

## **DISCUSSION**

The Government recommends that the Court impose a term of imprisonment within the stipulated Guidelines range of 8 to 14 months' imprisonment.   Such a sentence is necessary to meet the statutory ends of sentencing, including just punishment, general deterrence, and promoting respect for the law.   Based on conversations with defense counsel, we understand that

the defendant is seeking a non-custodial sentence.   For the reasons that follow, such a sentence would not fully reflect the seriousness of the offense and would fail to meet the goal of general deterrence.

*Applicable Law*

Once the Court has calculated the applicable sentencing guidelines, it must consider an appropriate sentence under the totality of factors set forth under Title 18, United States Code, Section 3553(a).   While the Court must calculate the Guidelines, it is "emphatically clear that the Guidelines are guidelines--that is, they are truly advisory."   *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008).   "A sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime."   *Id.* at 188.   "A district court may not presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense."   *Id.* 189; *United States v. Genao*, 869 F.3d 136, 141 (2d Cir. 2017) ("The sentencing court must make an individualized assessment based on the facts presented.").

*The Seriousness of the Offense*

This case involves a serious crime that involved disseminating false information to the markets in order to artificially change the trading price of a stock and thereby allow the defendant to fraudulently profit.   In particular, the defendant amassed a large following on social media and then took advantage of that large following by lying to thousands of people in the hopes that his lies would artificially inflate a stock's price.   That conduct is manipulative and threatens the integrity of securities markets.   Through its legislation on securities regulations, Congress has determined that honesty and transparency are crucial to the fair and efficient functioning of the securities markets and the defendant's conduct wholly undermined those values.   Spreading false information within securities market is harmful to investors and undermines public trust.   And, in

this case, the defendant's actions caused retail investors to make investing decisions that were not in their best interest, in order to serve his motive of greed.

Moreover, the spreading of false information to investors here was particularly culpable for a number of reasons.   *First*, the defendant held himself out as a leader in the penny stock space through many tweets that touted his knowledge and success.   The defendant then used that reputation to disseminate lies, knowing that his reputation on social media would help encourage his followers to follow his advice – to buy SCIE – and thereby artificially inflate its price.   *Second*, with respect to SCIE, the defendant knew – or ignored very compelling facts that showed – that SCIE was not even a legitimate business.   The defendant exchanged numerous communications with others questioning the *bona fides* of that company altogether, and yet he continued to "pump" the stock in order to inflate the value of the approximately 26 million SCIE shares that he had accumulated.   The defendant knew, or should have known, that he was encouraging his followers to purchase stock in a defunct company.   Notwithstanding that, he showed a craven disregard for the financial wellbeing of his Twitter followers by touting the stock even while he was dumping his shares.   *Third*, and more generally, the defendant knowingly took advantage of the lighter regulation inherent in the penny stock market – and thereby contributed to the heighted concerns and risks that exist in the penny stock market.   Whereas stocks that trade on the NYSE or Nasdaq, for example, must adhere to filing and other requirements, penny stocks operate in an arena free of nearly all regulatory oversight.   Penny stock investing is risky to begin with, and the defendant chose this space to amass a large Twitter following and then use lies to manipulate the market.   In essence, he took a market that was risky to begin with, and markedly increase its riskiness through his campaign of fraud.   The sentence imposed must be sufficient to reflect the seriousness of this crime and the danger it imposes to ordinary retail investors.

*General Deterrence*

A term of imprisonment is also warranted to promote the goal of general deterrence.   A non-custodial sentence would send the wrong message to the investing public and is not justified by the facts of this case.   First, the defendant knew what he was doing was wrong; this case did not involve a momentary lapse, but instead involved a planned effort on Gallagher's part to select a vulnerable penny stock and then manipulate the stock—and his Twitter followers—for his own financial benefits.   The public needs to see that such conduct is deserving of meaningful consequence.   Particularly in a market like the penny stock market—where touters on Twitter and other social media platforms can have outsize influence on trading volumes and prices—a case like this one can send a message to the market that fraudulent conduct will be punished accordingly.

The Probation Office's recommendation is based on the relatively low gain and the defendant's upbringing.   While the defendant may not have profited by staggering amounts from the charged conduct, the gain alone does not fully capture the defendant's culpability.   The crime here involved lies and deception in the securities market, and that creates serious harm and undermines confidence irrespective of the particular gain in a case.   Moreover, the defendant's upbringing does not excuse his conduct.   As set out in the PSR, the defendant has a stable marriage, a nuclear family, has had stable employment, and has built up substantial savings.   In other words, the defendant was not driven to criminal activity through desperation or coercion. He engaged in a criminal pump-and-dump scheme out of his own desire to profit from his stock trading, and based on a persona he developed on social media.   The sentence imposed should be sufficient to demonstrate to all market participants that lying is lying – whether in person or on social media – and deceptive practices like this crime manipulate our securities markets and warrant a custodial sentence, in line with that recommended by the sentencing guidelines.   *Cf.*

*United States v. Livesay*, 587 F.3d 1274, 1279 (11th Cir. 2009) ("[I]t is difficult to imagine a would-be white-collar criminal being deterred from stealing millions of dollars from his company by the threat of a purely probationary sentence.").

## **CONCLUSION**

For the reasons set forth above, the Government respectfully submits that the Court should sentence the defendant to a term of imprisonment within the applicable Guidelines range of 8 to 14 months.

Dated: New York, New York
June 13, 2022

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:     _____/s/_____
Richard Cooper/Daniel Tracer
Assistant United States Attorneys
Tel. (212) 637-1027/2329

8